## ¦ Kinley *against* Hill.

If a surety pays the creditor, he has a right to a mortgage formerly given to the creditor as collateral security; but if it be paid by the principal debtor, or out of a trust fund belonging to him, the mortgage is extinguished, and an assignment of it by the surety to secure moneys borrowed on his individual account is invalid, especially if the lender knew before such assignment that the mortgage was paid off.

The court is not bound to answer points proposed on a trial which, according to the rules of court, are out of time.

A witness, after having stated that certain notes were discounted at bank, and the proceeds applied to pay a mortgagee who assigned to the bank, may be asked whether one of them was paid, though it is not produced, nor evidence given what became of it.

ERROR to the Common Pleas of *Delaware* county, in a *scire facias* on a mortgage, brought by Hugh Kinley, assignee of the Western Bank, assignee of William Griffith and Abraham Hibbard, Jun., executors of Thomas Griffith, deceased, against George W. Hill, trustee of Hannah S. Hill, Peter Hill and Hannah S., his wife, with notice to Charles Sellers, eldest son and heir-at-law of Coleman Sellers, deceased, late trustee of Hannah S. Hill. A verdict and judgment were rendered for the defendants in the court below.

On the trial the plaintiff read in evidence a mortgage from Coleman Sellers and Hannah Hill, wife of Peter Hill, for certain property in Delaware county, executed on the 30th of June 1832, to secure the payment of the sum of $4200, for which a bond had been given on the 12th of June 1832, signed by Sellers, with a warrant of attorney, it being agreed the judgment on it should only bind the trust property mortgaged. On the 10th of March 1835, the executors of Thomas Griffith assigned the above bond and mortgage to the Western Bank; and on the 5th of February 1838, the Western Bank assigned them to the plaintiff, Kinley. The last assignment was made to secure certain promissory notes made by George W. Hill, (by Peter Hill, his attorney), to the plaintiff, which were given in December 1837, and were unpaid and protested. On the 21st of December 1829, Nathan Sellers and wife conveyed to Coleman Sellers the premises in the mortgage, among others, in trust to let the same, receive the rents and pay them to Hannah Hill for her separate use, with power to her to revoke the trust, and also to Sellers or any future trustee, with the consent and approbation of Hannah Hill, signified by writing under her hand and seal, by any deed, &c., to bargain and sell in fee-simple, or to mortgage as security for money to and for the use

[Kinley v. Hill.]

of Hannah Hill, with power to re-invest, and also to her to appoint a new trustee on the death of Sellers. On the 30th of June 1832, Thomas Griffith conveyed certain other premises to Sellers on the same trusts. On the 10th of June 1834, Hannah S. Hill appointed George W. Hill trustee in place of Coleman Sellers, deceased, which was confirmed by deed from Charles Sellers, eldest son of Coleman Sellers.

The defendant produced Mr Trimble to prove that the assignment to the Western Bank was made as collateral security for certain promissory notes discounted there, the proceeds of which were paid to Thomas Griffith, the mortgagee, when he assigned to the bank. One note for $2370 was drawn by George W. Hill, by Peter Hill his attorney, in March 1835, the other by La-Mott for $1800.

The witness was then asked whether the note given by G. W. Hill, by P. Hill his attorney, to the Western Bank, was paid. The plaintiff objected to an answer by the witness, because the note itself was not produced, nor any evidence given of what became of it. But the court allowed the question, and the plaintiff excepted.

The witness then stated it was paid from time to time; the last payment of $600 was made on the 30th of January 1838. He did not know out of what funds the notes were paid; all moneys received were credited to the estate, and the moneys paid debited. When payments were made on the note, they were charged to the trust estate; these payments did not absorb the balance. There was always a credit to the estate of H. Hill; there was a balance of about $20,000 to the credit of the estate in February 1840. The estate was credited with the proceeds of the note, and Griffith charged with the whole amount paid to him. The instalments on the notes as paid were charged to the estate. P. Hill, as attorney, received the rents of the trust estate of Mrs Hill, and had its general management. The notes to Kinley were for merchandise sold. Before the assignment to Kinley, Peter Hill declared to Kinley that he had paid to the bank the greater part of the mortgage, and would pay the balance, and then procure the assignment.

The defendant proved by other witnesses, that Peter Hill came to the bank and requested the mortgage to be transferred to Kinley, and the notes had been then paid off, and nothing was due to the bank on the mortgage.

The defendants, after the argument on both sides was closed, but before the judge commenced his charge to the jury, submitted certain written points to the court, and requested the court to charge the jury as therein stated; but the court refused to do so, because the points were not submitted before the arguments on both sides were closed, pursuant to the provisions of the rule of court. Thereupon the plaintiffs afterwards, and after the argu-

[Kinley v. Hill.]

ments on both sides were closed, but before the judge commenced his charge to the jury, submitted these points, viz:

1. That though the mortgage was paid and satisfied in February 1838, yet if they believe that George W. Hill was silent at the time of the assignment to Kinley, (as to the fact of the mortgage being extinguished), or procured the assignment to be made to him, without informing him that it was so paid and satisfied, the defendants cannot now take advantage of its being so paid and satisfied.

2. That if the jury believe that Peter Hill was silent (at the time of the assignment to Kinley,) as to the fact of the mortgage being paid and extinguished, or that he procured the assignment to be made to Kinley, without informing him that it was so paid and satisfied, the defendants cannot now take advantage of its being paid and satisfied; provided they also believe that Peter Hill, in his acts about said assignment, acted with the advice, knowledge or consent of George W. Hill, as his attorney.

3. That if Mrs Hill knew of the acts of George W. Hill, or Peter Hill aforesaid, and did not dissent therefrom, she and her estate is bound, and her knowledge and assent may be inferred from the fact of her having permitted Peter Hill or George W. Hill to receive the rents of her property, &c., and have the control over it, paying the debts against it, &c., for a number of years.

4. That a payment by George W. Hill to the Western Bank of the mortgage out of his own funds, does not operate as an extinguishment of the mortgage.

5. That if it was paid by George W. Hill out of his own funds, he acquired such an equitable interest in it, that he could and had authority to direct the assignment of it to such person as he might choose, or his attorney Peter Hill, acting with his knowledge and consent, might name.

6. That that consent and knowledge may be inferred by the jury, from the fact of the mortgage having been assigned to Kinley as security for a debt due to him by George W. Hill, and from the general authority vested in Peter Hill, as his attorney.

7. That if the mortgage was paid by George W. Hill, the jury cannot infer that it was paid out of the funds of Mrs. Hill, without some evidence to that effect, and that the best evidence would have been the books in which were kept the account of the receipts and disbursements of Mrs. Hill's estate, and evidence to support it.

8. That in the absence of proof, the jury cannot infer that George W. Hill was the debtor of Mrs Hill's estate in February 1838, at the date of the assignment to Kinley. That from the absence of the books of George W. Hill, and direct proof, and the fact that the moneys that were applied to payment of George W. Hill's notes in the bank, were charged in his books to Mrs Hill's

[Kinley v. Hill.]

estate, the presumption is strong, " that in February 1838, George W. Hill was the creditor of Mrs Hill's estate, to the amount of the said moneys at least."

9. Mrs Hannah Hill has full power and authority under the original deed of trust of Nathan Sellers and wife, to collect the rents, &c., or to appoint an attorney or attorneys, for that purpose; which appointment is not required to be made in writing. And therefore, Peter Hill, as the agent of his wife, did not require *written authority*, at the time of his acting as the agent of his wife, for the management of her estate.

The following is the rule of court referred to:

" If, on the trial of a cause, the counsel on either side wish the charge of the court on any points of law arising in the case, and which are made in the argument, the point or points shall be distinctly stated *in writing*, and delivered to the court in due time for the opposite counsel to observe upon them during his concluding argument: but the court will not hold themselves bound to charge on any point which was not made or discussed during the trial."

The court thus charged the jury:

This is a *scire facias sur* mortgage, executed by Coleman Sellers and Hannah Hill, wife of Peter Hill, to Thomas Griffith, on the 30th of June 1832, to secure the payment of the sum of $4200, for which a bond had been given, payable in one year after date. On the 18th of March 1835, this mortgage was assigned by the executor of Griffith, then deceased, to the Western Bank of Philadelphia, as collateral security for the payment of two notes, discounted by the bank to raise money to pay the executors the amount due them on the bond and mortgage. On the 5th of February 1838, the Western Bank assigned the same mortgage to Kinley, the plaintiff, as collateral security for the payment of certain notes made by Peter Hill, as the attorney in fact of George W. Hill, on the purchase of certain goods from the plaintiff. The defendants have pleaded payment, and having thus become actors, it is incumbent on them to satisfy you of the fact thus alleged. Two questions present themselves for consideration and decision. The first is, was the mortgage paid, and if so, out of what fund? This is a question of fact for you. Perhaps, on the facts as proved, it is not necessary to inquire what would be the effect of a payment made by Peter Hill, or George W. Hill, with the particular and private funds of the latter. In support of the plea pleaded, the defendant Hannah Hill, who has the beneficial interest in the mortgaged premises, has given evidence for your consideration that Peter Hill, as the agent of George W. Hill, employed a portion of the trust fund belonging to Hannah Hill, and arising from her separate estate, in payment of the notes discounted by the Western Bank, and of this mortgage transferred to it as collateral security, while the bank continued to hold it, and before it was assigned to the

plaintiff. The last of these payments, it would appear, was made on or about the 30th of January 1838; the assignment to plaintiff is dated 5th of February 1838.

Secondly. If, then, you believe the mortgage in the hands of the Western Bank was discharged out of money belonging to the trust fund, could George W. Hill keep it alive by procuring an assignment of it to be made to the plaintiff, as security for the payment of his proper debt, as against the separate estate of Hannah Hill, without her consent manifested in the form prescribed by the deed of 31st of December 1829, creating such separate estate? I think he could not. In the absence of any special agreement, a mortgage is, in Pennsylvania, considered but a security for the payment of money; when that is paid the mortgage is extinguished, and can never be resuscitated. Under the powers vested in Hannah Hill, by the deeds given in evidence, she might, perhaps, have agreed that the mortgage should be kept on foot as a security for Kinley's debt, provided that assent was given in the mode pointed out by those deeds; but there is no evidence of such assent. It is put on the ground that George W. Hill, the trustee, agreed to the transfer. Admit that he did so, yet if the mortgage was actually and unreservedly paid out of the trust fund in his hand, or even out of a mixed fund, by the trustee, it was extinguished, and his attempt to keep it alive as collateral security for his own debt, was a fraud on the trust, and therefore of no effect as against the *cestui que* trust. He had no authority, either to create an encumbrance, or to agree to the continuance of one extinguished, without the assent of Mrs Hill.

But is the plaintiff, Kinley, to be affected by the fact, if such were the fact, of the mortgage having been paid prior to the assignment to him? The rule is, that the assignee of a bond, mortgage, or other chose in action, except negotiable instruments, takes it subject to all the equity to which it is liable in the hands of the original or any subsequent holder. It is the duty of one proposing to accept an assignment of such instrument to make inquiry of the debtor, whether he have such defence. If, upon such inquiry, he is informed that the bond or other security is valid and unpaid, or if by the acts or declarations of the debtor, or even by his standing by in silence and seeing the assigment made without objection, the assignee is led to believe the instrument valid, and thus seduced to take the assignment, the debtor cannot set up his equity as a defence; but, in the absence of such facts, the assignee cannot allege ignorance in answer to a defence founded on payment, failure of consideration or set-off.

But, it is said, Kinley applied for information to the proper person, viz: the attorney in fact of George W. Hill. I do not think so. The face of the mortgage must have informed the plaintiff that the encumbered estate was held in trust, and directs him to sources of information. He was bound to look to the deeds recited

[Kinley v. Hill.]

in the instrument, of which he was about to take an assignment, and there he would have found that Mrs Hill had the whole beneficial interest, that it was her estate that was bound by the mortgage, and could only be bound by her assent given in a particular way. She, then, was the person to whom the inquiry should have been addressed, and no declaration of Peter Hill can bar her from showing as a defence against the plaintiff's claims, that in January 1838, the mortgage was paid and thus extinguished. But supposing Peter Hill was the proper person of whom to inquire. Trimble swore that before the assignment to plaintiff was made, Peter Hill declared to Kinley, that he had paid to the bank the greater part of the mortgage, and would pay the balance, and then procure the mortgage to be assigned to him, (Kinley). It would seem from this that he was in truth informed of the fact of payment being made before the assignment to him.

I have thus far considered the case as if George W. Hill was the actor in this transaction. The fact is, that so far as appears, he had nothing to do with it except through Peter Hill, who, it is said, was his attorney in fact. But, the proof that Peter Hill was authorized by G. W. Hill to superintend the estate, and collect, receive, and disburse the rents, did not constitute him an agent to make conveyance of the estate, or create an encumbrance by deed: even supposing the trustee could delegate his authority for that purpose, such substitution of another must be by deed. None such is shown; and as in respect to the powers vested in Hannah Hill over her separate estate, Peter Hill stood towards her in the relation of a mere stranger, nothing that he said or did having for its object to encumber her property can avail to affect her.

Errors were assigned as in the points, and the case was argued by

*S. F. Reed* and *Fallon* for the plaintiff in error.
*Markland* and *Broom, contra,* were stopped by the court.

The opinion of the Court was delivered by

Rogers, J.—By an indenture, dated the 21st of December 1829, Nathan Sellers and wife conveyed certain real estate therein described to Coleman Sellers, in trust for the separate use of Hannah Hill, the wife of Peter Hill. Afterwards, viz: on or about the 30th of June 1832, the trustee, on behalf of the *cestui que trust,* purchased other real estate from Thomas Griffith, and to secure the purchase money, gave the mortgage in suit, and at the same time executed a bond, to be a lien only on the mortgaged premises, signed by himself as trustee. Thomas Griffith afterwards died, and George W. Hill was substituted in pursuance of a power in the deed as a trustee instead of Coleman Sellers also deceased. The executor of Griffith being desirous of receiving payment of the amount due on the mortgage, the following arrangement was made:

George W. Hill, the trustee, gave his own note, payable to order, for $2370, and another note, by Daniel La Mott & Son, for $1800, given for rent of the trust property. These notes were discounted by the Western Bank, and the proceeds paid to the executors. It was agreed that, upon the receipt of the money, the executors should assign the mortgage as a collateral security to the bank, which was accordingly done on the 18th of March 1835. The whole amount due the bank on this account was paid on the 30th of January 1838, and on the 5th of February following the bank assigned the mortgage to the plaintiff. It was transferred at the instance of Hill, as a collateral security for the payment of certain notes given by Peter Hill, as the attorney in fact of George W. Hill, on a purchase of goods from the plaintiff, or as a security for the individual debt of George W. Hill.

The clear legal result of the evidence given on the trial is, that George W. Hill was a surety, and Hannah W. Hill the principal debtor. The property for which the mortgage was given was purchased for her use, and must be paid ultimately by the trust fund. And this is the most favourable view of the transaction for the plaintiff. From this it follows, that if the surety pays the debt to the bank, he has a right to a transfer of the mortgage to him, or he may direct a transfer in respect to his equity to the plaintiff. But if the payment is made by Hannah Hill, or, what is the same thing, out of the trust fund, the mortgage is satisfied, and no right to transfer it to the plaintiff can exist after its extinguishment. There is, in truth, nothing to assign. This is so plain, that it does not require the aid of argument. It was therefore a question of fact which the jury alone can determine, and consequently the court committed no error in referring it to their decision; and whether the jury decided it right or wrong, is not inquirable here. The mortgage was paid before the assignment to the plaintiff. Of this the evidence leaves no room to doubt. And out of what fund, or, in other words, whether, by the surety herself, or by *trust* money arising from the trust fund, was the only debateable matter. That it was paid out of the trust fund, has not only been found by the jury, but is most clearly deducible from all the evidence. If paid by the surety, it was for him to show it. It is sufficient, however, that it was a matter of which the jury alone had cognizance, and consequently it would have been error to have withheld the decision from them. There is nothing in the case which would justify the court in ruling, as a question of law, that George W. Hill had such an equitable interest in the mortgage as would authorize the assignment to the plaintiff. For, giving all the force to the manner in which the accounts were kept as between the trustee and the estate to which it may be justly entitled, it would be but a circumstance. The jury, after all, must determine the case from all the facts, and decide the question on which the whole case

[Kinley v. Hill.]

turns, viz: whether the payment was made by the trustee out of his own money or out of the trust fund. The jury, having decided the principal point, that is, that the payment was made out of the trust fund, the question occurs, what right has the trustee to assign the mortgage as a collateral security for his own debt? The answer is, that he has no right at all. The mortgage has performed its office. It is satisfied. And to attempt to revive it is equivalent to the creation of a new mortgage; for there is no perceivable difference between the revival of a satisfied mortgage and the creation of a new mortgage. The deed of trust provides that this may be done by the consent and approbation of the *cestui que trust,* under her hand and seal for that purpose. But, it is unfortunate for the plaintiff's claim that her consent in the manner alone in which it can be effectual, is not pretended. Nor can the plaintiff justly allege that he was deceived as to the real state of the transaction between the original parties. He also knew, if the testimony which is uncontradicted is believed, that the mortgage was paid before he accepted the assignment as a security for an existing debt.

I throw out of view the plaintiff's points, which were not presented, according to the rule of court, in proper time. The court did not, nor were they bound to answer them.

The bill of exceptions to the evidence has not been pressed, nor could it have been with any reasonable hope of success.

Judgment affirmed.