HAMMOND & a. v. BARKER & a., *Ex'rs.*

When it will subserve the purposes of justice, equity will restore a mortgage released through mistake, and give to it its original priority as a lien.

If A, holding a mortgage on the premises of B, subject to that of C, in ignorance of a subsequent attachment of the premises by C, on a different debt, release his mortgage and take a new one for the same consideration, equity will, as against the attachment, restore the lien of

his first mortgage to A; and if D, in ignorance of such attachment, pay to C the amount of his mortgage, which is thereupon discharged, and take a new one from B for the money so paid to C, he will be regarded as the equitable assignee of the mortgage to C, and will be subrogated to the original rights of C therein.

Payment of a mortgage debt from the funds of the debtor will ordinarily extinguish the mortgage; and therefore, when payment is made from the funds of a debtor and another, the mortgage will be upheld only to the extent of the funds furnished by the latter.

BILL IN EQUITY, to restrain the levy of an execution on a certain tract of land, and for a decree that certain mortgages are in force against the defendants.    Facts found by a referee.

July 10, 1873, the defendant Fred. A. Barker owned a house on Water street in Keene worth $6,000, which was subject to a mortgage of $2,000 to the Keene Five Cents Savings Bank; and the plaintiff L. W. Hammond owned a house on Dunbar street in the same city worth $2,000.    They agreed to exchange, and on the same day Barker conveyed the Water street place to Hammond subject to the $2,000 mortgage, and Hammond conveyed the Dunbar street property to Barker.    The bank surrendered its mortgage from Barker, and received a new note and mortgage of like amount on the same property from Hammond.    This left a balance due Barker from Hammond of $2,000, for which the latter gave the former a note secured by a second mortgage of the Water street place.

June 13, 1874, Hammond repurchased the Dunbar street property of Barker for $2,000, paying $1,000 cash, and giving Barker a mortgage of the place for the balance.    Hammond hired the $1,000 thus paid of one Holbrook, and to enable him to do so the plaintiffs, Joel and Joseph Hammond, signed a note to Holbrook as sureties for that amount, and on the 24th day of the same month they received from L. W. Hammond his promissory note for $1,000, payable to them on demand, with interest annually, "by reason of signing a note for me of one thousand dollars to Daniel Holbrook as sureties," and on the same day L. W. Hammond secured the note by a mortgage on the Dunbar street place, subject to that of Barker, the note being fully described in the mortgage.    In the execution of this note and mortgage there was no fraud on the part of any of the parties, but they were executed for the sole purpose of indemnifying Joel and Joseph against the Holbrook note, on which Lowell has since paid $500, and interest to June 19, 1880.

At some time prior to July 27, 1876, F. A. Barker assigned the notes and mortgages held by him as aforesaid to his father, T. A. Barker, since deceased, who became the owner thereof, and who afterwards, on April 30, 1878, paid the $2,000 mortgage on

the Water street place to the savings-bank, and took an assignment thereof. This made him the owner of mortgages of $4,000 on the Water street place, and of the one for $1,000 on the Dunbar street place. July 16, 1877, he commenced proceedings by writ of entry for foreclosure on the latter, and at the same time sued out a trustee writ against L. W. Hammond, on which all of Hammond's interest in any real estate in Keene was attached, and one Britton was summoned as trustee. Both actions were entered at the following October term, and in the real action conditional judgment was rendered for the amount of the $1,000 mortgage note of June 13, 1874. The other action was continued.

For the purpose of enabling L. W. Hammond to pay the conditional judgment, the three Hammonds applied to the plaintiff Aldrich for assistance. He offered to loan $1,000, provided he could have a first mortgage on the Dunbar street place. This was agreed to by the Hammonds; and thereupon Aldrich loaned $1000 to L. W. Hammond, the other Hammonds discharged their mortgage, and L. W. executed a mortgage of that place to Aldrich, who now holds it, and, as a part of the same transaction, gave Joel and Joseph a mortgage of indemnity upon the same premises against their liability on the Holbrook note.

To the $1000 thus received from Aldrich, L. W. added $121.36 from his own funds, and April 27, 1878, paid the same to the defendant F. A. Barker, who received it for his father, and gave a receipt therefor in full satisfaction of the judgment; and the same was entered satisfied on the records of the court.

May 31, 1878, T. A. Barker made peaceable entry upon the Water street property for the purpose of foreclosing both of the $2,000 mortgages thereon, and perfected his title at the end of one year thereafter.

At the October term, 1878, Barker's · action of assumpsit was sent to referees, who reported the amount due upon the mortgages above the value of the property, and upon the report judgment was rendered for the plaintiff, January 6, 1880, for $869.35 damages and $28.96 costs, for which execution issued and was placed in the hands of the defendant Holt, a deputy sheriff, who commenced a levy on the Dunbar street property, and was proceeding therewith when restrained by the injunction granted in this case.

At the time when Joel and Joseph Hammond discharged their mortgage of June 24, 1874, and took the one of April, 1878, in order to give Aldrich's mortgage precedence over theirs, none of the Hammonds knew that the Dunbar street property was under attachment in favor of Barker, nor had Aldrich knowledge of such attachment; but there was no concealment of its existence on the part of T. A. Barker, or the defendants who are his executors, nor did they, or either of them, make use of any means to obtain the discharge of the mortgage to Joel and Joseph Hammond, nor

to induce Aldrich to make the loan of $1,000, or to take a mortgage upon the Dunbar street place as security therefor.

The prayer of the bill is to restrain the levy of the aforesaid execution, and for a decree reviving the original mortgages to Joel and Joseph Hammond and to Barker.

*H. Blake* and *E. L. Cushing*, for the plaintiffs.

*D. H. Woodward* and *Batchelder & Faulkner*, for the defendants.

BLODGETT, J.    Upon the facts stated the plaintiffs are entitled to relief.    The question is not whether the defendant administrators shall be deprived of the security obtained by the attachment of their intestate, but whether they shall be permitted to take an unconscionable advantage of the mistake of the plaintiffs, and thereby get not only payment of the mortgage debt on the Dunbar street place, but also hold it, discharged of the mortgage, to pay another debt not contracted in reference to that property, and which neither Joel and Joseph Hammond nor Aldrich were under any obligation to pay.

In our view the case falls within the rule, as well of equity as of law, that when a fact affecting the rights of parties is known to the one and not known to the other, it is the duty of him to whom it is known to give notice thereof to the other (*Cooke* v. *Ludlow*, 5 Bos. & Pul. 119, *Farwell* v. *Smith*, 12 Pick. 88); and we think, moreover, that the rights of all the parties may be preserved without impairing or in any way lessening the value of the attachment of the equity of redemption in the property which, without justice, the defendants seek now to hold discharged of the prior incumbrances.

Joel and Joseph Hammond obviously had an interest in and security on the Dunbar street place to protect, and it being manifest that the discharge of their original mortgage was made through mistake, it may be set aside and the mortgage given its original priority as against the attachment.    Jones Mort. (2d ed.) s. 971; *Bruse* v. *Nelson*, 35 Iowa 157; *White* v. *Wilson*, 6 Blackf. 448; *Cansler* v. *Sallis*, 54 Miss. 446; *Skillman* v. *Teeple*, 1 N. J. Eq. 232; *Dudley* v. *Bergen*, 23 N. J. Eq. 397; *McKenzie* v. *McKenzie*, 52 Vt. 271.    And, moreover, the liability being the same, the taking of the second mortgage was not a waiver of the lien of the first, and did not extinguish it.    *Ladd* v. *Wiggin*, 35 N. H. 421, 426, and cases cited.    *Cutter* v. *Emery*, 37 N. H. 577.

Nor under the circumstances was the Barker mortgage discharged or extinguished by its payment through L. W. Hammond; but, on the contrary, it may well be held that the mortgage debt still subsists for the purpose of upholding the mortgage to the extent of the funds contributed by Aldrich, and that to this extent he is to be regarded as the equitable assignee of the mortgage,

and therefore subrogated to the rights of the original mortgagee therein *(Heath* v. *West*, 26 N. H. 191);—for, where money due on a mortgage is paid, it will operate as a discharge of the mortgage, or in the nature of an assignment of it, substituting him who pays in the place of the mortgagee, as may best serve the purposes of justice; and a mortgage is never to be considered as discharged, so long as it is necessary to consider it otherwise, in order to give those who have the estate of the mortgagee the full enjoyment of that estate. *Stantons* v. *Thompson*, 49 N. H. 272, 279, 280, and cases cited; *Hatch* v. *Kimball*, 16 Me. 146.

When an equitable assignment is effected, the person paying the mortgage is substituted in place of the mortgagee, and has the rights of the latter under the mortgage *(Holt* v. *Baker*, 58 N. H. 278, *Briggs* v. *Hannowald*, 35 Mich. 474); and it is said that the right of subrogation applies in general in favor of any person, who, not being under any obligation to pay the mortgage debt, does so for the benefit of the debtor, as by furnishing money under an agreement to execute a new one. Jones Mort., s. 874, and cases cited; *Snelling* v. *McIntyre*, 6 Abb. N. Cas. 469; *Lockwood* v. *Marsh*, 3 Nev. 138; *Swift* v. *Kraemer*, 13 Cal. 526. But however this may be, we think, under the circumstances of this case, that the equity of Aldrich is superior to that of the defendants, and that, as against them at least, he is entitled to the right of subrogation. But as payment of the mortgage debt from the funds of the debtor ordinarily extinguishes the mortgage *(Kinley* v. *Hill*, 4 Watts & Serg. 426, *Perkins* v. *Dibble*, 10 Ohio 434, *Shepherd* v. *McClain*, 18 N. J. Eq. 128), and as payment of part of a mortgage debt is a satisfaction and release of the mortgage *pro tanto (Howard* v. *Gresham*, 27 Ga. 347, *Ins. Co.* v. *Howard*, 2 Sandf. Ch. 183, *Briggs* v. *Seymour*, 17 Wis. 263, 264, *Champney* v. *Coope*, 32 N. Y. 543), the amount paid by L. W. Hammond from his own funds is to be deducted, and the mortgage is therefore upheld only for the amount actually contributed by Aldrich.

The result is, to make the Dunbar street property subject to the claims of Aldrich and Joel and Joseph Hammond under the mortgages of June 13 and 24, 1874, and consequently the defendants can only levy their execution upon the equity of L. W. Hammond in that property.

*Decree accordingly.*

ALLEN, J., did not sit: the others concurred.