# Hill v. Denniston.

*Principal and surety—Right to collateral—Subrogation.*

A paying surety is entitled to the benefits of all collateral securities, protective of the debt paid by him which are held by the creditors.

Where a debtor enters into an agreement with his creditors, by which he pledges certain specified property as security for the payment of certain enumerated debts, among which debts is a promissory note which an accommodation indorser is subsequently compelled to pay to the person who had discounted the note, the accommodation indorser is entitled to share in the proceeds of the collateral, and his right is not affected by a stipulation in the agreement, to the effect that the agreement should not relieve the indorsers upon the note, and " that no money paid by said indorsers shall inure to the benefit of any one, excepting," the person named as having discounted the note. MITCHELL and FELL, JJ., dissented.

Argued Oct. 30, 1899. Appeal, No. 133, Oct. T., 1899, by defendants, from decree of C. P. Allegheny Co., No. 2, April T., 1898, No. 1035, on bill in equity, in case of S. W. Hill v. Nannie C. Denniston and W. II. Denniston, administrators of J. F. Denniston, deceased. Before GREEN, C. J., McCOLLUM, MITCHELL, FELL and BROWN, JJ. Affirmed.

Bill in equity for an account and a receiver.

The facts appear by the opinion of the court below, WHITE, P. J., which was as follows:

### OPINION OF THE COURT.

1. F. P. Bell, doing business as F. P. Bell & Company, executed his promissory note, dated November 16, 1892, at sixty days, for $4,500, which was indorsed for the accommodation of Bell, by S. W. Hill, the plaintiff, and J. E. Ridall, and discounted by J. F. Denniston. This note was frequently renewed and reduced, until March 22, 1894, when the last renewal was given, at four months, for $3,000, indorsed for the accommodation of Bell, by the plaintiff and Ridall and discounted by Denniston. It was not paid at maturity, and plaintiff, after suit brought, had to pay it to Denniston.

2. Bell was otherwise indebted to Denniston, and to other parties, in the aggregate sum of $72,150, and had transferred

to each of them some collaterals.   These parties, by an agreement dated July 15, 1893, attached to plaintiff's bill exhibit "B," threw all these securities into hotchpot, the proceeds thereof to be divided pro rata on their respective claims.   The plaintiff was not a party to that agreement.   But the $3,000 note, on which plaintiff was indorser, was made a part of the claim of Denniston.

3. Some of the collaterals have been sold.   But in consequence of the death of some of the parties, and of protracted litigations, all have not yet been disposed of.   The parties to the agreement bought in some of the real estate pledged as collateral, and some is not yet sold.   No dividends have been declared since plaintiff paid the $3,000.

4. The litigations have about ended, since waiting the opinion of the court in Chicago.   When that is delivered (the case having been argued) there need be no further delay to a speedy conversion of all the collaterals into money, and a distribution made pro rata to the parties and creditors under that agreement.

The bill prays for an account of the proceeds of the securities, that plaintiff get his pro rata share, and that a receiver be appointed to sell the remaining securities.

### CONCLUSIONS OF LAW.

The $3,000 note, on which plaintiff was accommodation indorser, was one of the debts of Bell to Denniston, which was expressly included in the agreement of July 15, 1893, for which the collaterals, or securities, were given, and which was entitled to a pro rata share of the proceeds.   As the plaintiff had to pay that note he claims to come in, instead of Denniston, for the pro rata on that note.   It is not by the way of subrogation or substitution, to the rights of Denniston.   He stands on higher ground.   His claim is based on the fact, that these collaterals were expressly given to secure certain indebtedness of Bell, among which was this note on which he was accommodation indorser, and which he had to pay.   He has, therefore, in his own right, both a legal and equitable claim to a pro rata share of the proceeds on this note.

As all of the securities may be disposed of and reduced to money, in a short time, without further delay, when a final dis-

tribution can be made, it is inexpedient to make distribution of a part.   If the parties to the agreement of July 15, 1893, do not proceed with due diligence to convert all the securities into money and make distribution, the plaintiff may hereafter file a bill for a receiver, and call for an account of what has been sold or bought in by the parties.

Let decree be drawn in accordance with this opinion, the defendant to pay the costs.

*Error assigned* was the decree of the court.

*A. M. Imbrie,* with him *J. H. White,* for appellants.—The right to enforce subrogation depends upon the equity of each case.   It may be enforced by the debtor or by the creditor, as the case may be, but it seems that in no case may the latter do what the former could not do with the right conceded to be in him: Searight's Est., 163 Pa. 210.

There can be no such thing as substitution to the right of a party who is not wholly satisfied.   The court cannot interfere with his security while a part of his debt remains unpaid: Kyner v. Kyner, 6 Watts, 221.

The doctrine of substitution being one of mere equity and benevolence will not be enforced at the expense of a legal right. The doctrine of substitution only applies where the principal has been wholly paid.   It cannot be permitted where he had been paid in part only: Bank of Penna. v. Potius, 10 Watts, 152; Brough's Est., 71 Pa. 460.

As subrogation is purely an equitable right, it ought to be denied in all cases where its exercise would produce injustice: Keely v. Cassidy, 93 Pa. 318; Ins. Co. of North America v. Fidelity, etc., Co., 123 Pa. 525; Sheldon on Subrogation, sec. 127; Swan v. Patterson, 7 Md. 164; Union Bank of Maryland v. Edwards, 1 G. & J. 365; Forest Oil Co.'s App., 118 Pa. 138; Budd v. Oliver, 148 Pa. 194; Rice v. Morris, 82 Ind. 204; Musgrave v. Dickson, 172 Pa. 629; Seibert's Est., 4 Pa. Superior Ct. 518; Grubbs v. Wysors, 32 Gratt. 127; Sheldon on Subrogation, secs. 118, 127; 2 Brandt on Suretyship, sec. 321; Wade v. Coope, 2 Sim. 155.

*Levi Bird Duff,* with him *J. J. Miller,* for appellee.

OPINION BY MR. JUSTICE McCOLLUM, October 8, 1900:

In this case the facts are stated concisely in the opinion of the court below, and need not be repeated. It is sufficient to refer to the agreement of July 15, 1893, forming a syndicate of creditors, and pledging various items of property of F. P. Bell as security for his debts. The agreement signed by the creditors named recites that "F. P. Bell is indebted to J. F. Denniston in the sum of $18,450, part of which is a note of $3,000 indorsed by S. W. Hill and J. E. Ridall, also to Nannie Denniston in the sum of $3,200; also to the Central Bank of Pittsburg in the sum of $26,500, and to Julius Adler in the sum of $2,500, and said D. P. Reighard is indorser on notes of said F. P. Bell in the sum of $21,500, making the total aggregate due of $72,150." After enumerating the property held in pledge by these different creditors prior to the agreement, and other property then deposited with C. C. Davis, cashier of the Central Bank of Pittsburg, "in further security of all of said indebtedness and indorsements," the agreement provides, "that any money collected or realized from any of the securities mentioned, held either by any of the respective creditors or by said C. C. Davis for all, shall be distributed pro rata upon all of said indebtedness." Language could hardly be more specific than this. All of the property is to be distributed pro rata to all of the indebtedness, including the note paid by plaintiff as accommodation indorser. But the following language is relied upon as affecting the plaintiff's right to participate in the distribution of the funds produced by the property pledged: "It is distinctly understood that nothing in this agreement is to be an extension of the commercial paper upon which S. W. Hill and J. E. Ridall are indorsers so as in any manner to relieve said indorsers from liability thereon, and that no money paid by said indorsers shall inure to the benefit of any one excepting said J. F. Denniston." It is plain that this language does not have the effect claimed for it. The specifications of property enumerated were pledged as security for the debts named. Plaintiff as accommodation indorser of the $3,000 note was also security for that debt. It occurred to the parties no doubt that the pledge of the property on the one hand might operate to release the indorsers, or on the other that a payment by the indorsers might be claimed as a further secu-

rity for the benefit of all the creditors. It was evidently to prevent such construction from being placed upon the agreement that the clause last quoted was added. The language used is capable of no other construction. It is equivalent to saying that no money paid by said indorsers shall inure to the benefit of any one of the parties to the agreement excepting said J. F. Denniston. It would be a perversion of the language to hold it to mean that a payment by the indorsers shall not inure to the benefit of the indorsers. The payment by plaintiff could not be said to inure to his benefit. It was clearly to his detriment notwithstanding, the fact that by such payment he became the owner and holder of the note. It is evident that the purpose of the clause was as stated above. There was nothing in the agreement to modify the express provision for a pro rata distribution amongst all, including the note indorsed and paid by the plaintiff.

The question of subrogation is not involved. The syndicate property was pledged in part for the promissory notes. A release of this or a breach of duty with regard to it would be a defense by the accommodation indorser: Sitgreaves v. Farmers and Mechanics' Bank, 49 Pa. 359. A paying surety is entitled to the benefits of all collateral securities protective of the debt paid by him which are held by the creditors: Kinley v. Hill, 4 W. & S. 426 ; Gossin v. Brown, 11 Pa. 527, cited in Graff & Co.'s Estate, 139 Pa. 76. If a surety pays the amount of a judgment against his principal he suceeds by operation of law to the rights of the creditor and is entitled to collect his judgment. It is not necessary that the paying surety be subrogated: Duffield for use of Jackson v. Cooper, 87 Pa. 443. Payment of the note carried with it all the incidents of ownership which included the right to the collateral. That is as much a part of the property acquired by the payment of the note as the note itself.

Decree affirmed and appeal dismissed at the cost of appellants.

MITCHELL and FELL, JJ., dissent.