**In re EAGSON CORPORATION, Debtor.**

**FIRST PENNSYLVANIA BANK, N.A., Plaintiff,**

**v.**

**Myron HARRIS, Trustee in Bankruptcy of Eagson Corporation,**

**Willard T. Jackson, Harold E. Stassen, Central Penn National Bank, Mary Jane Black, Robert E. Breidenstein, Commonwealth of Pennsylvania, Stockard Shipping & Terminal Corp. and American Equipment Rental, Defendants.**

**Bankruptcy No. 76–1971G.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 23, 1985.

See also 26 B.R. 657, 26 B.R. 660.

J. Dennis Faucher, Kristin R. Hayes, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for plaintiff, First Pennsylvania Bank N.A.

Horace A. Stern, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for defendant, Myron Harris, Trustee in Bankruptcy of Eagson Corp.

Harold E. Stassen, Wayne, Pa., for debtor, Eagson Corp.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The basis of dispute in the case at bench is whether we should grant the trustee's motion for an order enlarging a previously entered order of this court which directed the trustee to satisfy a sum certain due on a mortgage of estate property. The trustee would have us enlarge our order to allow the trustee to be subrogated to the mortgagee's secured position for his payment. Since the trustee was the primary obligor on the mortgage in question, his payment extinguished the debt, thus precluding us from granting the requested relief.

The essential facts to this aspect of this labyrinthian case are as follows:[1] The debtor granted a nonrecourse mortgage in a parcel of realty in 1972 to the First Pennsylvania Banking and Trust Company ("First Pennsylvania"). The debtor fell in default of the mortgage and soon thereafter filed a petition for reorganization under chapter XI of the Bankruptcy Act of 1898. The debtor was adjudicated a bankrupt in 1979 and, thereafter, we ordered the sale of the property free and clear of liens with such encumbrances attaching to the proceeds of any sale of the parcel. Ultimately a sale of the property brought $625,000.00.

First Pennsylvania commenced suit in this court for a determination of its entitlement to the proceeds of the sale and, subject to certain restrictions set forth in an earlier order and accompanying opinion of February 24, 1984, we directed the trustee to pay First Pennsylvania $280,000.00 of the proceeds. *First Pennsylvania Bank, N.A. v. Harris* (In Re Eagson), 37 B.R. 471 (Bankr.E.D.Pa.1984). The trustee then filed the instant motion on May 10, 1985, for enlargement of the order of February 24, 1984. The trustee would have us amend the said order so that the trustee would be subordinated to the former secured position of the mortgagee in the proceeds due to his $280,000.00 payment to First Pennsylvania. The basis for the trustee's request is found in the loan agreement that supported First Pennsylvania's mortgage. In pertinent part the loan agreement provides:

> The parcel [of realty in question] (hereafter called the "Eagson Tract" ...) shall be released from the lien of the Mortgage prior to the final repayment of

---

**1.** *This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy* Rule 7052.

the loan amount in accordance with this Agreement and the terms of the Note if either (1) [the debtor] pays to [First Pennsylvania] the sum of $280,000.00 in reduction of the loan or (2) payments of $280,000.00 in reduction of the loan are made to [First Pennsylvania] by [the debtor] or others in excess of those payments required to be made to [First Pennsylvania] under Ssection 3.3. If, because of a default of Borrower, [First Pennsylvania] begins foreclosure proceedings against the property subject to the lien of the Mortgage, and *if subsequent to the start of such proceedings a sum equal to the unpaid balance of the $280,000.00 payment referred to in (2) of the proceeding sentence is made to [First Pennsylvania] in order to obtain a release of the lien of the Mortgage from the [property] [First Pennsylvania] will give to the party so paying such sum a subordinated participation in the Note* (to the extent of the payment so made); the payment of such sum for such purpose shall not be applied by [First Pennsylvania] in reduction of the loan, but shall be retained by [First Pennsylvania] for its own account. (Emphasis added).

Subordination would give the trustee a creditor's secured claim against the proceeds of the sale of estate property. Since the trustee is the representative of the estate, we are faced with the anomaly that the trustee would be both a lien creditor and a lien debtor on the same obligation. A review of Pennsylvania property law is necessary to determine the propriety of this result, particularly in light of the concepts of extension of debt and the merger of a mortgage in a fee interest.

Putting the matter under discussion in perspective, one noted commentator has stated: "The question whether the acquisition of the mortgaged land of the mortgage debt by one person has, in the particular case, the effect of discharging the debt and extinguishing the mortgage lien is frequently one of some difficulty." 5 Tiffany, *The Law of Real Property* § 1479, p. 503

(3d ed. 1939). Another leading treatise has well summarized the law in this area:

¶ 459. Termination of a mortgage—Merger.

When a greater and a lesser lead interest meet in the same person, in the same right, without any intermediate interest, a merger is said to occur, the lesser interest being swallowed by the greater. This doctrine arises from the fact that normally there is no utility served by separately maintaining two parts of the entire bundle of ownership rights when all of these rights are held by one owner. Accordingly, the law courts have followed the rule of extinction of the lesser right whenever the requisite facts are present. Equity, however, has never favored the rule of merger, and, if there is any advantage to be gained by continuing the independent existence of the rights, that continuance, explained as a product of "intent," actual or presumed, is maintained in equity.

When, therefore, an interest in land and a mortgage thereon unite in possession in the same person, a merger ordinarily occurs, since this is normally to the advantage of that holder.

That the mortgagor may convey his equity of redemption to the mortgagee is well established, provided that the same be for a valuable consideration, and that the transaction does not result from economic pressure applied by the mortgagee to circumvent the mortgagor's chance to redeem. Such conveyance ordinarily results in a merger of the two interests in the mortgagee, provided of course, the interest so conveyed is the entire interest subject to the mortgage. But such a conveyance does not, of itself, cut off junior liens or interests, their existence prevents a merger, the mortgage being kept alive in order to permit foreclosure against these subordinate claims. This applies also in the case of an acquisition of the interest of the mortgagor by an intermediate mortgagee, the lien being preserved in order to maintain superiority over claims of greater subordination.

When the mortgagee elects to foreclose the mortgage only to the extent that there is due and unpaid thereunder any interest upon the principal sum secured by the mortgage, the mortgage is not deemed to have merged in the judgment. The mortgage remains in effect as security for payment of the principal sum which remains due.

Merger is also denied in some situations where the interests of third persons are adversely affected. If the mortgagee, prior to acquisition of the equity of redemption, has collaterally assigned his mortgage to secure an obligation of his own, the mortgage lien is preserved. Similarly, if the mortgage is held by husband and wife as tenants by the entireties, a conveyance to the husband alone does not result in a merger, since this would destroy the wife's interest as well.

An assignment of the interest of the mortgagee to the original mortgagor normally results in merger. When the interest of the mortgagee is assigned to a grantee of the original mortgagor, merger is unavoidable. Only so can the grantee's duty to indemnify his grantor, to the extent of the debt if he has assumed the mortgage, and to the extent of the value of the land in all events, be effectuated.

As in the case of the acquiring mortgagee, a mortgagor is not handicapped by merger on acquiring the mortgage where intervening liens are present. Also, third parties are not prejudiced by merger, as where money is loaned to the mortgagor for the purpose of ·acquiring the mortgage, and the lender's equitable lien is protected against junior claimants by keeping the acquired mortgage alive, to the extent of the advances, for his benefit.

3 Powell, *The Law of Real Property* ¶ 459, pp. 696.24 to 696.30 (1984) (footnotes omitted).

Notwithstanding the above quoted authority, additional principles are in the fore:

> One who is primarily liable for a debt cannot acquire the debt, that is, a claim against himself, and assert that the debt is still outstanding. The same person cannot be debtor and creditor, and the effect of his acquisition of the debt is to render it no longer existent. So when the person whose debt is secured by a mortgage, ordinarily the mortgagor himself, acquires the debt with its incidental lien, the debt being discharged, the mortgage lien is extinguished. And the case is the same when a grantee of the land assumes payment of the mortgage and thereafter acquires the mortgage debt. He being primarily liable for the debt, the debt is discharged. It would seem, however, that if the person so primarily liable for the mortgage debt undertakes to acquire it by purchase, that is, by paying the amount of the debt to the holder thereof, this involves an extinguishment of the lien by payment rather than by merger, and consequently the rule that merger necessarily results if the person primarily liable acquires the debt and incidental mortgage security would seem properly to be restricted in its actual operation to cases in which such person acquires the debt and mortgage by gift or by the payment of less than the debt. The cases usually fail to distinguish in this regard between payment and merger, but it seems sufficiently evident that if the person primarily liable pays the debt, though nominally purchasing it and taking an assignment, the debt, with its incidental mortgage lien, is extinguished not by reason of its merger but by reason of its payment. That such person cannot claim to be subrogated, on payment of the debt, to the rights of the creditor, even though he undertakes to obtain an assignment of the debt, has been frequently decided, and these decisions would seem to involve the view that the delivery to the creditor, by the person primarily liable, of the amount of the debt, constitutes a payment and extinguishment of the debt.

5 Tiffany, *The Law of Real Property* § 1482, PP. 512–13 (3d ed. 1939) (footnotes omitted). The Pennsylvania Supreme Court has upheld this view. *Kinlet v. Hill,* 4 Watts & Serg. 426, 432 (1842). This is in

accord with the more general principle that subrogation will be denied where the entity paying on the debt is primarily rather than secondarily liable. *Anderson v. Borough of Greenville*, 273 A.2d 512, 442 Pa. 11 (1971).

Accordingly, in the case at bench, the trustee stands in the shoes of the debtor as the primary obligor on the mortgage debt, and as such the debt was extinguished on his payment of the mortgage to First Pennsylvania. Under Pennsylvania law he is not entitled to an assignment of the mortgage, since that mortgage is now extinguished. We will enter an order accordingly.